IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Kristin Cosby, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:20-00655-HMH-JDA |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| South Carolina Probation, Parole and | ) | |
| Pardon Services, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Kristin Cosby ("Cosby") alleges that South Carolina Probation, Parole and Pardon Services ("Defendant") engaged in discriminatory and retaliatory behavior in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq., and 42 U.S.C. § 1981. (Not. Removal Ex. A (State Court Documents), ECF No. 1.) Defendant filed a motion for summary judgment. (Mot. Summ. J., ECF No. 44.) In her Report and Recommendation filed on August 26, 2021, Magistrate Judge Austin recommends granting Defendant's motion for

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

summary judgment.  (R&R, generally, ECF No. 54.)  For the reasons stated below, the court

adopts the Report and Recommendation and grants Defendant's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Viewed in the light most favorable to Cosby, the non-movant, the record reflects the

following.[2]

Defendant is a state agency that supervises individuals who are placed on probation or

parole. Its director serves as a member of the South Carolina Law Enforcement Training Council

("LETC"), which is the agency that issues the certification required to work in law enforcement

in South Carolina.  S.C. Code Ann. §§ 23-23-30(A)(3), 23-23-40.  Cosby was initially employed

by Defendant from 2006 to 2010.  (Resp. Opp'n Summ. J. Ex. 8 (Cosby Aff. ¶ 3-4), ECF No.

50-8.)  After a short period of time with the Greenville County Sheriff's Office, Cosby applied

to return to work for Defendant in 2012.  (Id. Ex. 8 (Cosby Aff. ¶ 3-4), ECF No. 50-8.)

However, Cosby was not hired at that time because Defendant wanted to hire a male for

the position.  (Id. Ex. 8 (Cosby Aff. ¶ 3-4), ECF No. 50-8.)  Thereafter, Cosby filed a charge of

discrimination with the United States Equal Employment Commission ("EEOC"), asserting that

Defendant's refusal to hire her based on her gender violated Title VII ("2012 Charge").

(Id. Ex. 8 (Cosby Aff. ¶ 4), ECF No. 50-8.)  The EEOC agreed and entered a finding of

discrimination against Defendant.  (Id. Ex. 6 (EEOC Determination), ECF No. 50-6.)  As a

result, Defendant agreed to hire her for the position.  (Resp. Opp'n Summ. J. Ex. 8 (Cosby Aff.

---

[2] The facts are more fully set out in the Report and Recommendation.  (See R&R 2-14,
ECF No. 54.)

(Ex. A Conciliation Agreement 3), ECF No. 50-8.)  Cosby began working for Defendant in Fall

2012.  (Id. Ex. 8 (Cosby Aff. ¶ 2), ECF No. 50-8.)

Chadwick Gambrell ("Gambrell"), although not the agent in charge ("AIC") at the time

of the actions complained of in the 2012 Charge, was Cosby's AIC when Defendant rehired her.

(Id. Ex. 5 (Charge of Discrimination), ECF No. 50-5); (Id. Ex. 9 (Harmon Depo. 50:12-15), ECF

No. 50-9.)  Shortly after she was rehired, Cosby was assigned to a different AIC until December

2017,[3] when Gambrell became Cosby's AIC again.  (Id. Ex. 8 (Cosby Aff. ¶ 5), ECF No. 50-8);

(Id. Ex. 4 (CJA Hr'g Tr. 162:6-8), ECF No. 50-4.)

In March 2018, a position became available on the sex offender team, which was led by

Cosby.  (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 163:23-164:4), ECF No. 50-4.)  Gambrell

sought Cosby's opinion regarding who should fill the position, and Cosby opined that Agent

Christina Worthy ("Worthy") would be her choice for the position.  (Id. Ex. 4 (CJA Hr'g Tr.

164:3-6), ECF No. 50-4.)  Gambrell responded by asking Cosby whether she thought it was a

good idea because he suspected that Cosby and Worthy "had more than a professional

relationship."  (Id. Ex. 4 (CJA Hr'g Tr. 164:7-9), ECF No. 50-4.)  Cosby denied having anything

more than a working relationship with Worthy and indicated that she understood that "only

professional relationships are allowed between supervisors and subordinates. . . ."  (Id. Ex. 4

(CJA Hr'g Tr. 164:10-21), ECF No. 50-4.)  However, Gambrell continued to observe that Cosby

and Worthy were often at the office together, sometimes in the evenings, and he continued to

---

[3] Cosby's affidavit states that Gambrell became her AIC again "in the fall of 2018."
(Resp. Opp'n Summ. J. Ex. 8 (Cosby Aff. ¶ 5), ECF No. 50-8.)  However, the record clearly
reflects that Gambrell became her AIC in December 2017.  (Resp. Opp'n Summ. J. Ex. 10
(Cosby Depo. 61:14-19), ECF No. 50-10); (Id. Ex. 17 (LETC Decision 7), ECF No. 50-17.)

have concerns about whether Cosby was engaging in an inappropriate relationship with her subordinate. (Id. Ex. 4 (CJA Hr'g Tr. 164:22-165:20), ECF No. 50-4); (Id. Ex. 9 (Harmon Depo. 77:11-25), ECF No. 50-9.)

As a result, Gambrell began to investigate the matter further. (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 165:21-25), ECF No. 50-4.) In October 2018, Gambrell's concerns increased after "some issues . . . came up with another agent, and [Cosby] moved on from Worthy" and "was concentrating on somebody else." (Id. Ex. 4 (CJA Hr'g Tr. 166:2-6), ECF No. 50-4.) Gambrell and assistant agent in charge ("AAIC"), Robert Honeycutt ("Honeycutt"), counseled Cosby regarding these issues. (Id. Ex. 4 (CJA Hr'g Tr. 167:4-8), ECF No. 50-4.) Throughout the investigation, Cosby continued to deny all allegations and provided explanations for her actions and behaviors. (Id. 5, ECF No. 50.)

In late September 2018, Cosby applied for a promotion to the position of unit coordinator. (Id. Ex. 8 (Cosby Aff. ¶ 5), ECF No. 50-8); (Id. Ex. 9 (Harmon Depo. 74:12-75:11), ECF No. 50-9.) Less than a month later, on October 19, 2018, she filed an internal complaint ("Internal Complaint"). (Resp. Opp'n Summ. J. Ex. 8 (Cosby Aff. (Ex. B Internal Complaint), ECF No. 50-8)). In the Internal Complaint, Cosby alleged that Honeycutt and Gambrell "created a hostile work environment for [herself] and some members of [her] team." (Id. Ex. 8 (Cosby Aff. (Ex. B Internal Complaint), ECF No. 50-8)). Though not mentioned in the Internal Complaint, Cosby asserts that:

> In making that complaint and using the language that I did, it was my intention of reporting my belief that I was being treated differently and subjected to harassing conduct on the basis of my gender. I also believe that the harassment I was being subjected to at that time was in partial retaliation of the previous Charge of Discrimination I filed against Defendant, which resulted in Defendant being forced to hire me.

4

(Id. Ex. 8 (Cosby Aff. ¶ 5), ECF No. 50-8.)  Cosby was interviewed regarding her Internal

Complaint on October 29, 2018, by Defendant's Director of the Office of Professional

Responsibility, Jeffrey Harmon ("Harmon").  (Mot. Summ. J. Ex. 18 (Summary of Findings-

Cosby Complaint), ECF No. 44-13.)  Cosby expressed her concern that Honeycutt and Gambrell

were regularly meeting with her regarding her unsatisfactory communication and management

of others, and questioning her about an unsubstantiated misconduct allegation.  (Id. Ex. 18

(Summary of Findings-Cosby Complaint), ECF No. 44-13.)  After discussing the matter with

Cosby, Harmon determined that the Internal Complaint raised a communication issue and not a

gender-based discrimination claim.  (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 75:19-77:20),

ECF No. 50-4.)  As a result, Harmon remanded the Internal Complaint to Deputy Director Mike

Nichols ("Nichols") and Regional Director Gerald Black ("Black") to address.  (Id. Ex. 4 (CJA

Hr'g Tr. 77:12-20), ECF No. 50-4.)

Throughout this time, Gambrell continued his investigation of Cosby's relationships

with subordinates.  (Id. Ex. 4 (CJA Hr'g Tr. 168:8-169:20), ECF No. 50-4.)  On October 30,

2018, Black informed Gambrell that a disciplinary action would not be initiated against Cosby

at that time and nothing would be placed in her county file or human resource file about the

issues that Gambrell was investigating.  (Id. Ex. 4 (CJA Hr'g Tr. 175:2-12), ECF No. 50-4.)

Nevertheless, Gambrell considered the matter to be "ongoing" and discussed with Black that he,

Harmon, and Black would meet with Cosby again.  (Id. Ex. 4 (CJA Hr'g Tr. 173:8-17; 176:3-

19), ECF No. 50-4.)  However, the meeting was ultimately canceled when Black developed a

conflict.  (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 173:8-17), ECF No. 50-4.)

On November 7, 2018, Gambrell was informed that Cosby had filed the Internal Complaint against him.  (Id. Ex. 4 (CJA Hr'g Tr. 172:19-173:2), ECF No. 50-4.)  The following day, Gambrell met with Nicole Albany ("Albany") regarding her interactions with Cosby. (Id. Ex. 4 (CJA Hr'g Tr. 175:20-176:1), ECF No. 50-4.)  Albany told Gambrell that she had a consensual, sexual relationship with Cosby while she was Cosby's subordinate, and that Cosby removed Albany from her team when the relationship ended.  (Id. Ex. 4 (CJA Hr'g Tr. 144:1-14; 168:8-25), ECF No. 50-4.)  While Gambrell was aware that Defendant did not have a policy specifically prohibiting sexual relationships with subordinates, he believed that such behavior still constituted "misconduct" in violation of Defendant's general professionalism policy. (Id. Ex. 4 (CJA Hr'g Tr. 170:14-171:25), ECF No. 50-4.)

Gambrell typed up his notes from his interview with Albany and forwarded the notes to Black that same day.  (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 169:6-10), ECF No. 50-4.) After waiting over a week and not receiving a response from Black, Gambrell contacted Harmon and Defendant Director Jerry Adger ("Adger") to inform them about Albany's allegation. (Id. Ex. 4 (CJA Hr'g Tr. 169:11-20), ECF No. 50-4.)

On November 30, 2018, Adger directed Harmon to investigate Albany's allegation that she had a consensual sexual encounter with Cosby in 2015 at an off-duty party and that afterwards their relationship turned hostile, which affected her pay and job performance. (Id. Ex. 4 (CJA Hr'g Tr. 24:9-18; 102:1-24), ECF No. 50-4.)  The purpose of the investigation was to ascertain whether Cosby had created a hostile work environment for Albany by allegedly removing her from Cosby's team and affecting her pay.  (Id. Ex. 4 (CJA Hr'g Tr. 102:16-24 ), ECF No. 50-4.)

6

On December 3, 2018, Harmon interviewed Albany, who admitted having had the consensual sexual encounter with Cosby in 2015. (Mot. Summ. J. Ex. 19 (Summary of Findings-Albany Allegation 1), ECF No. 44-14.) Albany also alleged that Cosby took adverse employment actions against her afterwards. (Resp. Opp'n Summ. J. Ex. 9 (Harmon Depo. 108:2-109:2 ), ECF No. 50-9.)

Subsequently, Harmon met with Honeycutt and Gambrell regarding Cosby's Internal Complaint. (Mot. Summ. J. Ex. 18 (Summary of Findings-Cosby Complaint 1), ECF No. 44-13.) Honeycutt and Gambrell produced documentation which dated back to January 2017 and  highlighted Cosby's need for improved communication and professionalism with her managers. (Id. Ex. 18 (Summary of Findings-Cosby Complaint 1), ECF No. 44-13.) The documentation included some praise for Cosby's job performance and reflected plans to address her areas of weakness. (Id. Ex. 18 (Summary of Findings-Cosby Complaint 1), ECF No. 44-13.)

On December 7, 2018, Harmon and Risk Manager Supervisor Allison Avinger ("Avinger") met with Cosby to discuss the Albany allegations. (Id. Ex. 19 (Summary of Findings-Albany Complaint 1), ECF No. 44-14.) Cosby was informed that failing to be honest and truthful in the interview could subject her to discipline. (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 35:21-36:22), ECF No. 50-4.) After Cosby denied the allegation, she was advised that a polygraph examination would be scheduled. (Id. Ex. 4 (CJA Hr'g Tr. 40:6-21), ECF No. 50-4.) In addition, Harmon informed Cosby that she would have until the following Monday to decide whether to submit to the polygraph examination, and that refusal could subject her to termination. (Id. Ex. 4 (CJA Hr'g Tr. 40:6-21), ECF No. 50-4.)

Subsequently, on December 10, 2018, Cosby sent Harmon a text message stating that she consented to the polygraph examination and wished to amend her statement. (Mot. Summ. J. Ex. 19 (Summary of Findings-Albany Complaint 1), ECF No. 44-14.) Harmon and Avinger interviewed Cosby again and she stated that "Agent Nicole Albany attempted to have a sexual encounter with her, but no encounter happened because Agent Albany was interrupted in her attempt." (Id. Ex. 19 (Summary of Findings-Albany Complaint 1), ECF No. 44-14.) Because Cosby continued to deny that any actual encounter occurred between herself and Albany, Harmon told her that the polygraph examination would proceed. (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 42:19-23), ECF No. 50-4.)

Byron Jones, a South Carolina Law Enforcement Division ("SLED") polygrapher, administered the polygraph examination to Cosby on December 17, 2018, with Harmon in the observation room. (Id. Ex. 4 (CJA Hr'g Tr. 43:2-9), ECF No. 50-4.) Prior to the polygraph examination, Cosby again denied that she had engaged in sexual activity with Albany. (Id. Ex. 4 (CJA Hr'g Tr. 125:9-20), ECF No. 50-4); (Mot. Summ. J. Ex. 29 (Cosby Depo. 52:15-22), ECF No. 44-15.) In addition, Cosby denied the conduct during the polygraph examination. (Mot. Summ. J. Ex. 29 (Cosby Depo. 52:23-53:3), ECF No. 44-15.) After the polygraph examination, Cosby was informed that she had failed. (Id. Ex. 29 (Cosby Depo. 53:4-8), ECF No. 44-15.) Subsequently, Cosby admitted that she had engaged in sexual activity with Albany and agreed to provide a handwritten statement. (Id. Ex. 11 (Cosby Voluntary Statement), ECF No. 44-11.) In his report, Harmon determined that Cosby's false statements were "a direct violation of the recognized standards required of employees to respond to internal investigations" and the Defendant's professionalism policy. (Id. Ex. 19 (Summary of Findings-Albany Complaint 1),

ECF No. 44-14.)  As a result, both Harmon and Adger recommended that Cosby be terminated. (Id. Ex. 19 (Summary of Findings-Albany Complaint 2), ECF No. 44-14.)  One day later, Cosby submitted a letter of resignation.  (Resp. Opp'n Summ. J. Ex. 1 (Resignation Letter), ECF No 50-1.)  On January 3, 2019, Adger reported to the South Carolina Criminal Justice Academy ("CJA") that Cosby had been terminated due to misconduct.  (Mot. Summ. J. Ex. 13 (PCS Separation), ECF No. 44-12.)  At Cosby's request, a hearing officer held a contested case hearing regarding the charges of misconduct.  (Id. Ex. 30 (ALC Order 4), ECF No. 44-16.) Ultimately, the LETC determined that Cosby should be permanently denied law enforcement certification in South Carolina, and her certification was revoked.  (Id. Ex. 30 (ALC Order 5), ECF No. 44-16.)  This decision was affirmed on appeal.  (Id. Ex. 30 (ALC Order 13), ECF No. 44-16.)

On September 26, 2019, Cosby filed a charge with the EEOC, alleging gender discrimination and retaliation.  (Id. Ex. 1 (Charge of Discrimination), ECF No. 44-2.)  The EEOC issued a Dismissal and Notice of Right to Sue on September 30, 2019.  (Mot. Summ. J. Ex. 3 (Dismissal and Not. of Rights), ECF No. 44-4.)  Cosby filed the instant action in the Greenville County Court of Common Pleas on December 27, 2019.  (Not. Removal Ex. A (State Court Documents), ECF No. 1.)  The case was removed to this court pursuant to 28 U.S.C. § 1331 on February 6, 2020.  (Not. Removal, ECF No. 1.)  On February 10, 2020, Defendant filed a motion to dismiss, seeking to dismiss all of Cosby's claims.  (Mot. Dismiss, ECF No. 6.) Magistrate Judge Austin entered a Report and Recommendation on March 24, 2020, recommending that Defendant's motion to dismiss be granted as to Cosby's claims for fraud and defamation, but denied as to Cosby's Title VII claims.  (R&R, generally, ECF No. 12.)  Neither

9

party filed objections, and the court entered an order adopting the Report and Recommendation.

(Order Adopt. R&R, ECF No. 13.)  Defendant filed a motion for summary judgment on May 17,

2021. (Mot. Summ. J., ECF No. 44.)  Cosby filed a response in opposition on June 15, 2021.

(Resp. Opp'n Summ. J., ECF No. 50.)  Defendant filed its reply on June 21, 2021. (Reply, ECF

No. 51.)  On August 26, 2021, Magistrate Judge Austin issued the Report and Recommendation

recommending that the court grant Defendant's motion for summary judgment.  (R&R,

generally, ECF No. 54.)  Cosby filed objections to the Report and Recommendation on

September 27, 2021.  (Pl.'s Objs., ECF No. 58.)[4]  Defendant filed a reply to Cosby's objections

on October 12, 2021.  (Def.'s Resp. Pl.'s Objs., ECF No. 59.)  This matter is ripe for review.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the

non-moving party is to be believed and all justifiable inferences must be drawn in his favor.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude

---

[4] As an initial matter, the court notes that Cosby has largely failed to provide specific
citations to the record to support the alleged facts and argument in any of her filings.  It is not
the court's responsibility to comb the voluminous record for issues of fact.  The local rules make
clear that  "[a]ny responses supported by discovery material shall specify with particularity the
portion of the discovery material relied upon in support of counsel's position."  Local Civil Rule
7.06 of the District of South Carolina.

the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B.  Report and Recommendation

In her report and Recommendation, Magistrate Judge Austin recommends granting Defendant's motion for summary judgment with respect to Cosby's remaining claims.  First, the magistrate judge recommends granting summary judgment to Defendant as to Cosby's gender discrimination claim because Cosby failed to make a prima facie showing of discrimination.  (R&R 18, ECF No. 54.)  Specifically, Cosby failed to produce evidence sufficient to establish the fourth element, that other employees who are not members of the protected class did not suffer an adverse employment action under similar circumstances.  (Id. 17 n.8, 18, ECF No. 54.)  Second, the magistrate judge recommends granting summary judgment to Defendant on Cosby's hostile work environment claim because she failed to produce any evidence showing that any mistreatment she suffered was based on her gender.  (Id. 23, ECF No. 54.)

11

The magistrate judge also recommends granting summary judgment to Defendant on Cosby's retaliation claims.  (Id. 18, ECF No. 54.)  As to Cosby's retaliation claim regarding her Internal Complaint, the magistrate found that "there was no reasonable basis for understanding the Internal Complaint to allege discrimination on the basis of sex," and therefore, the complaint did not assert conduct that violated Title VII.  (Id. 25, ECF No. 54.)  Finally, the magistrate judge recommends granting summary judgment to Defendant on Cosby's retaliation claim relating to her 2012 Charge because she has failed to produce sufficient evidence to establish a causal connection between the 2012 Charge and any of the alleged adverse actions. (R&R 26-32, ECF No. 54.)

**C. Objections**

Cosby filed objections to the Report and Recommendation.  (Pl.'s Objs., ECF No. 58.) Objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Cosby first objects to the magistrate judge's finding that Cosby failed to meet her burden of producing sufficient evidence to establish a prima facie case of gender discrimination. (Pl.'s Objs. 2, ECF No. 58.)  Second, Cosby argues that the magistrate judge erred in concluding that Cosby failed to demonstrate that any mistreatment she suffered was based on

her gender.  (Id. 7, ECF No. 58.)  Third, Cosby objects to the magistrate judge's finding that

Cosby failed to produce sufficient evidence to establish a retaliation claim under Title VII.

(Id. 7, ECF No. 58.)  The court will address each of these in turn.

### 1. Gender Discrimination Claim

Cosby alleges gender discrimination in violation of Title VII based on several adverse

employment actions taken by Defendant.  (Resp. Opp'n Summ. J. 24 n.11, ECF No. 50.)  These

adverse actions include "various investigations opened into [Cosby] in 2018, forcing [Cosby] to

take a polygraph regarding alleged conduct that violated no policy, forcing [Cosby] to resign,

and reporting to the [CJA] that [Cosby] was 'terminated' for 'misconduct' when it now admits

that her separation was deemed a resignation at the time he[r] letter of resignation was accepted

by the defendant."  (Id. 24 n.11, ECF No. 50.)

As the plaintiff, the burden is on Cosby to establish a prima facie case for discrimination.

See, e.g., Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002).  To demonstrate

a prima facie case of gender discrimination, Cosby must show: "(1) membership in a protected

class; (2) satisfactory job performance; (3) adverse employment action; and (4) different

treatment from similarly situated employees outside the protected class."  Coleman v. Maryland

Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted).  Further, with respect to

summary judgment, as the non-moving party, Cosby has "the ultimate burden of demonstrating

a genuine issue of material fact for trial."  Thompson v. Potomac Elec. Power Co., 312 F.3d

645, 649 (4th Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Cosby objects to the magistrate judge's finding that Cosby has not forecasted evidence sufficient to establish the fourth element, the existence of valid comparators.  (Pl.'s Objs. 3, ECF No. 58.)[5]  In determining whether a comparator is similarly situated, "courts consider whether the employees (I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications–provided the employer considered these latter factors in making the personnel decision."  Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019) (internal quotation marks omitted).

"[T]he plaintiff must provide evidence that the proposed comparators are not just similar in some respects, but similarly-situated *in all respects*."  Id. (internal quotation marks omitted and emphasis in original); see also Haynes v. Waste Connections, Inc., 922 F.3d 219, 223-24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal quotation marks omitted).

When assessing misconduct, "precise equivalence in culpability between employees is not the ultimate question."  Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985).

―――――――――――――

[5] Defendant concedes that Cosby has produced evidence sufficient to establish the first, second, and third  prongs.  (Mem. Supp. Summ J. 8, ECF No. 44-1.)

Indeed, any comparison "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). However, "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008).

Cosby claims that Brian Fahnle, Allan Norfus, and Michael Richards are valid comparators because they (1) applied for the same job as Cosby, (2) were not subjected to investigations as Cosby was, (3) were not required to take a polygraph examination, (4) and were not forced to resign due to misconduct. (Resp. Opp'n Summ. J. 9, 14-15, ECF No. 50); (Pl.'s Objs. 4, ECF No. 58.)

The magistrate judge rejected these arguments because Cosby "has not forecasted evidence that [the same decision maker] ever possessed information about these three would-be comparators that was comparable to the information they possessed regarding [Cosby]." (R&R 20, ECF No. 54.) Cosby raises essentially the same arguments in her objections that she raised in her response in opposition. Further, Cosby has not presented any evidence that Gambrell or Adger had any information about potential misconduct concerning Brian Fahnle, Allan Norfus, or Michael Richards. Accordingly, Cosby's objection is without merit.

Cosby also claims that Greg Stewart is a valid comparator because he was not investigated by Defendant in 2015, after rumors arose of him having a romantic relationship with a female subordinate. (Resp. Opp'n Summ. J. 9, 15, ECF No. 50); (Pl.'s Objs. 5, ECF No. 58.) The court agrees with the magistrate judge's conclusion that Cosby "has not forecasted

evidence that the people who decided to investigate her were involved in the decision not to investigate Stewart, or even [were] aware of the rumors about Stewart." (R&R 21, ECF No. 54.) Additionally, Cosby has not presented any evidence that there was ever a complaint or allegation, formal or informal, made against Stewart concerning this conduct. Accordingly, Cosby's objection is without merit.

### 2. Hostile Work Environment Claim

Title VII provides a cause of action to an employee "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish a prima facie case of gender discrimination based on a hostile work environment claim, "a plaintiff must show that there [was] (1) unwelcome conduct; (2) that is based on the plaintiff's [gender]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive atmosphere; and (4) which is imputable to the employer." Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011) (quoting Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010)).

The magistrate judge concluded that Cosby failed to sufficiently identify evidence that would establish that any mistreatment she suffered was because of her gender. (R&R 23, ECF No. 23.) In her objections, Cosby argues that her affidavit provides sufficient evidence to survive summary judgment. (Pl.'s Objs. 7, ECF No. 58.) Specifically, because her Internal Complaint contained allegations of harassment "by her two male supervisors" and her belief that

"the harassment was based on her gender." (Id. 7, ECF No. 58.)  However, the Internal

Complaint does not use the word "male" or otherwise sufficiently reference the gender of

anyone involved.  (Resp. Opp'n Summ. J. Ex. 8 (Cosby Aff. Ex. B (Internal Complaint), ECF

No. 50-8.))  Indeed, Cosby also stated in her Internal Complaint that other members of her team

had been subjected to a hostile work environment without any reference to their gender.  (Id. Ex.

B (Internal Complaint), ECF No. 50-8.)  Regardless, the mere fact that her supervisors were

male, and Cosby is a female, fails to provide sufficient evidence that any mistreatment occurred

because of her gender.  Accordingly, Cosby's objection is without merit.

### 3. Retaliation Claims

To establish a prima facie case of Title VII retaliation, Cosby must demonstrate "(I) that

she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii)

that a causal relationship existed between the protected activity and the adverse employment

activity." Guessous v. Fairview Property Investments, LLC, 828 F.3d 208, 217 (4th Cir. 2016)

(alterations and internal quotation marks omitted).  "In the context of element one of a

retaliation claim, an employee is protected when she opposes not only employment actions

actually unlawful under Title VII but also employment actions she reasonably believes to be

unlawful." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (en banc)

(alterations and internal quotation marks omitted).

"[Thus], when an employee communicates to her employer a belief that the employer

has engaged in . . . a form of employment discrimination, that communication virtually always

constitutes the employee's opposition to the activity." DeMasters v. Carilion Clinic, 796 F.3d

17

409, 417 (4th Cir. 2015) (alterations and internal quotation marks omitted).  However,  activity is only protected if an employee's subjective belief is "*objectively* reasonable in light of the facts."  Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003).

　　　"An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  In addition, satisfying the alleged adverse employment action element "requires[s] the employee to show 'that retaliation was a but-for cause of a challenged adverse employment action.'"  Guessous, 828 F.3d at 217 (quoting Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015)).  The causal connection prong requires a plaintiff to demonstrate that his or her "employer took the adverse action *because* of the protected activity."  Roberts v. Glenn Industrial Group., Inc., 998 F.3d 111, 123 (4th Cir. 2021) (quoting Bryant v, Aiken Regional Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (emphasis in original)).

　　A plaintiff may satisfy this prong by (1) "establish[ing] the existence of facts that 'suggest that the adverse action occurred because of the protected activity,'" or (2) "establishing that 'the adverse act bears sufficient temporal proximity to the protected activity.'"  Roberts, 998 F.3d at 123 (quoting Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007)).
 "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action."  Roberts, 998 F.3d at 123.

18

### I. Internal Complaint

Cosby argues that the magistrate judge erred in concluding that the Internal Complaint did not constitute protected activity. "Protected activity under Title VII includes complaints of discrimination based upon race, color, religion, sex, or national origin." id. at 122. While "[c]omplaints raised through internal company procedures are recognized as protected activity," id., the complaint must do more than "merely complain[] in general terms of discrimination . . . , without indicating a connection to a protected class or providing facts sufficient to create that inference, [otherwise it] is insufficient" to constitute protected activity. Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 718 (7th Cir. 2018).

As the magistrate judge noted, the record clearly reflects that Harmon investigated whether Cosby was attempting to assert a Title VII complaint and concluded that she was not. (R&R 25 n.14, ECF No. 54.) Harmon determined after meeting with Cosby that she was complaining about a communication issue. (Resp. Opp'n Summ. J. Ex. 4 (CJA Hr'g Tr. 75:19-77:20), ECF No. 50-4.) Further, as discussed above, from the face of the Internal Complaint, there was no basis for finding that it alleged discrimination on the basis of gender. Therefore, Cosby has failed to establish that she was engaging in protected activity. Accordingly, Cosby's objection is without merit.

19

### ii. 2012 Charge of Discrimination

Cosby objects that the magistrate judge erred in concluding that she failed to forecast sufficient evidence of a causal connection between her 2012 Charge of Discrimination and any of the alleged adverse employment actions.  The essence of Cosby's argument is that Gambrell, who was briefly Cosby's AIC after she was rehired in 2012, began investigating her in 2018 in retaliation for Cosby's 2012 complaint of gender discrimination, and that all subsequent adverse actions flowed from this "retaliation."  (Pl.'s Objs. 10-15, ECF No. 58.)

"A causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity."  Roberts, 998 F.3d at 126 (quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)).  Thus, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."  Roberts, 998 F.3d at 126 (citing Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir. 1982) (holding that three years between the protected activity and the adverse employment action was too remote to establish the third element)).  Six years elapsed between the 2012 Charge of Discrimination and the alleged adverse employment actions in this case.  This time lapse is too remote to raise any inference that a causal connection exists between the 2012 Charge of Discrimination and the actions taken by Gambrell in 2018 to investigate Cosby's relationships with her subordinates.  Accordingly, Cosby's objection is without merit.

## III. CONCLUSION

Therefore, after a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge Austin's Report and Recommendation and incorporates it herein by reference.

Therefore, it is

**ORDERED** that Defendant's motion for summary judgment, docket number 44, is granted.

**IT IS SO ORDERED**.


                                          s/Henry M. Herlong, Jr.
                                          Senior United States District Judge

Greenville, South Carolina
October 12, 2021